Good morning, ladies and gentlemen. I appreciate you appearing here on short notice, and I want to thank my colleagues for their availability by video. Judge Gould, can you hear us? Yes, Judge Thomas, I can hear you and see you very well. Good. Good morning. And Judge Bivey? Yes, I can hear you. Very good. And see you. Well, welcome to both of you, and we'll proceed in oral argument in Wood v. Ryan. Ms. Conrad? Good morning. May it please the Court. I'm Robin Conrad, and I represent Mr. Joseph Wood, the plaintiff appellant in this case. I'd like to save five minutes for rebuttal. The case before this Court is simple. It presents a legal question of whether Mr. Wood has demonstrated a likelihood of success on his claim that the public has a First Amendment right of access to information about Arizona's execution proceedings. The answer is yes. In California First Amendment coalition, this Court held there is a First Amendment right of access to executions. Therefore, the right of access to the governmental proceeding of an execution already exists in this circuit. Well, that case didn't go quite that far. You'd have to agree. The case said a First Amendment right to view executions. However, that's the same principle as the Richmond newspaper in the right to view a criminal proceeding, so the right to view trial. And what has happened since that decision and with the jurisprudence around First Amendment is that the right to view this proceeding comes with also the right of access to documents that are involved in these proceedings. Ms. Conrad, your statement of First Amendment coalition overstates what we said there, doesn't it? It's not documents in connection with. It was documents that were integrally related to the proceeding itself, such as transcripts or exhibits that were actually issued in the trial. I'm sorry. Are you talking about California First Amendment coalition or courthouse news? Yes. Courthouse news. That particular case involved civil proceedings. But this Court, and we cited also Seattle Times, which is a case from 1988 involving access to sealed pretrial documents. And what the Court held and said in Seattle Times is that this Court begins with the presumption that a public, the public and the press, have a right of access in criminal proceedings and documents. So the Court has recognized that documents come attached with the right of access to a criminal proceeding. And counsel, Judge Gould, if I could ask you one question. Sure, Judge. In terms of your argument, I would like to know where one draws the line on documents. Are all documents in any way related to the proceeding to be made available or just documents that were filed in the court? For example, in any of the cases that you're relying on, did they require production of documents beyond documents that were filed in the court file? Judge Gould, we're not asking for all documents relating to the governmental proceeding, which is what the defendants have suggested. We're asking for specific documents in this case that relate to the execution process. So in Seattle Times, that was access to sealed pretrial documents. So that wasn't – those weren't documents that were generally available to the public. Right. But I think Judge Gould's question is, do you have a case in which documents outside the documents that were actually filed in the case were subject to the right of access? In Cal Almond, which we cited, that talks about administrative proceedings and the documents accessible in administrative proceedings. But here, it's not just about documents that are publicly filed, because there are no documents that are publicly filed during an execution. Right. What is critical, though, in this case in understanding the First Amendment, is that the – in order to have an informed discussion about capital punishment and about the execution proceeding, which this Court has held there's a right of access to the execution itself, then there needs to be information about that process. So it can't – Counsel, does – it's Judge Bybee. Does Arizona have a Freedom of – its own Freedom of Information Act? I'm sorry, could you repeat your question, Judge Bybee? I didn't hear you. Yes. Does Arizona have an equivalent to the Federal Freedom of Information Act? Arizona has a Public Records Act under state law. Okay. Why don't you file your request under the Public Records Act? We – we don't need to file it under the Public Records Act, first of all. But secondly, what Mr. Wood is requesting here – Did you try filing it under the Public Records Act? Mr. Wood himself has not filed it under the Public Records Act. However, in the letter from Director Ryan here, in this case dated June 6th, he indicated he was treating this request under the Public Records Act. So for purposes of the discussion here, it is as though the States already treated Mr. Wood's request as being under the Public Records Act, which the State has not given access to this information. And so why we're here to – You are asking us to find a First Amendment right that is far more aggressive than Arizona's equivalent of the Freedom of Information Act. That's a pretty dramatic right. I can't think of any other place in which the Supreme Court has granted access to documents that, for example, would not have been made available under the Government in the Sunshine Act or a Federal Freedom of Information Act. Judge Bybee, as we discussed in our reply brief, the reason for Freedom of Information Act and these Public Records Acts is because it's giving public access to information that hasn't historically been publicly available. So documents that aren't generally part of the public process. Executions and the information about executions have, in fact, been part of the history of executions in our country, and specifically in Arizona, as we discussed in our briefing. So it is not a stretch to ask for limited information that Mr. Wood has asked here about this process. The specific information involves information about the drug. The information we've asked for about the drug is the same type of information that Arizona has provided in a prior case at ER 67 through 72. The labels of the drug, the information that we've asked for comes from the drug boxes, the labels. That's information that has been publicly, historically available regarding execution processes, such as the ropes that were used for hanging or the gas chamber. That information was known to the public who manufactured the ropes. The type of tweed that was used, the diameter of the rope, that type of information is what we're asking. Counsel, at what point does the right vest? Is the right to this information required to be issued before the execution, or could it be issued contemporaneous with the execution? Could it be issued shortly after the execution? In Mr. Wood's case, he's arguing that he has a right of access to this information before his execution occurs. Why? Because the past Mr. Wood is arguing for a right of the public. So Mr. Wood stands on the same footing as anybody else in Arizona. Why does he have a right prior to the execution? Judge Bybee, the reason why it's important for the public to have this information before the state carries out the execution is in part due to the discussion and public discourse about the death penalty, in particular, regarding the drugs, regarding the qualifications. If the information is released by the state, if we were to grant you relief, and the state were to issue the information on Tuesday, how would that change the public debate as opposed to if the information were released on Thursday? For example, the state has cited a dissent from a Landrigan, the Landrigan case, about Mr. Landrigan was challenging the drugs that were imported there under the Eighth Amendment. That information, at that point, the defendant did not know and could not prove that the state had violated the Controlled Substances Act when importing that information. I mean, importing that drug. An Eighth Amendment right would have been personal to the defendant. Mr. Wood is not making an argument that he has personal privilege to know the drug manufacturer before he's executed. That would not be the right of the public. That would be a right peculiar to Mr. Wood. As I understand it, your argument is that Mr. Wood has made an argument on behalf of the public. So I want to know, why does the public have a right to know this on Tuesday as opposed to Thursday? The public has a right to know before the state actually carries out the execution because it can inform public debate and discussion about what's going to happen, about whether the state is actually going to comply with the law and has done the things that it has said that it has done. This is part of the principles of the First Amendment, being able to discuss and have checks on the governmental proceeding. That's one of the roles that Globe newspaper recognized, that public discussion of government affairs, public check on practices. So in order for the public to be able to check this practice before it occurs, before the state takes the ultimate act that it can take against one of its citizens, the public should be aware of how it's going to go about doing that. But in a number of cases, Phoenix newspapers among them, we've made transcripts available after the event has occurred because of sensitivities involved in the event itself. So how do you distinguish this? Well, Judge Thomas, in cases where the information wasn't available contemporaneously and something was sealed in a trial and then the information was made available later, there's a reason. The person asking for the sealed information in court has to come forward with a compelling interest so that that closure is permitted. Here, the defendants have not come forward with any interest, let alone a compelling interest, seeking not to give access to information that the public is entitled to under the First Amendment right of access to an execution proceeding. So as far as what Mr. Wood here today is asking for and why it would matter for him, is that his First Amendment rights are already being violated under our briefing. So he is entitled to a preliminary injunction because he's already suffered the harm. Even an allegation of a First Amendment violation this Court has held is enough to show harm, and Mr. Wood has suffered that harm because his First Amendment rights have not been met. Okay, let's pull that one out just a little bit. So at what point was he entitled to this information? You're suggesting that the First Amendment violation is ongoing, but it must have occurred at some point. So at what point did the State have an obligation to disclose to the public the identity of the manufacturer? When Mr. Wood sought the information, the… What does Mr. Wood seeking the information have to do with the right of the public to the information? Well, the right of the public to the information, a member of the public needs to come forward and seek the information. So if the information is never sought, then it remains closed, but that doesn't mean that the public doesn't still have a right of access to that information just because no public member has ever asked for that particular information. So the facts surrounding this case were Mr. Wood wrote a letter to the director asking for this information, and part of his information that he's asked for is information that the State has given in the past, has turned over in the past. The information with the drug labels were turned over during discovery and also turned over during the last most recent executions in Arizona by way of court order, which the State did not appeal. So Mr. Wood had assumed that the State would comply with the district court order at the time, finding that there was a First Amendment right of access to this information. Ms. Conrad, do we know how many States make this information available that have a drug protocol? The State has argued that there's cases, they've cited several other cases from different jurisdictions, saying the fact that prisoners have brought these challenges prove and show strong evidence that this information has not been available in other States. But that's incorrect. As we explained in our reply brief, other States have in fact made information about the drugs available. Arkansas, Texas, Georgia, Missouri, all of those States until recently. And do we know that there are some States that are now not making that information available? Yes, Judge Bybee. In Georgia in particular, they... So if we have a mixed record, that is some States think that they wish to make it available, and some States don't wish to make it available, and it appears that some States, such as Arizona, have changed their mind on the wisdom of doing that, how can we find that there is a consistent practice that is now compelled by the First Amendment? Judge Bybee, the law doesn't require a consistent practice. What the law requires is looking generally to the historical openness of the proceeding, which here is the execution process. And we have a very, very short record when it comes to drug protocols. This is in part, as we explained, because this issue didn't come up until recently. And this Court and Press Enterprise both have said an absence of historical openness does not mean that it's not an important enough issue, that it can't be held information that the public should have a right of access to. You're down below five minutes. Would you like to reserve? Are we going to save time for rebuttal? Yes, I am. Thank you so much. Mr. Sparks? Good morning. May it please the Court. My name is Jeff Sparks, and I represent the defendants appellees. Mr. Wood has not shown a substantial likelihood of success on the merits because the First Amendment does not provide access to the information that he's seeking. In essence, he's attempting to use the First Amendment as a discovery tool to compel the government to turn over information in its possession. But as the Supreme Court has repeatedly held, the First Amendment does not provide a general right of access to information in the government's possession. Now, the right that Mr. Wood is trying to apply here is the right of access to government proceedings. That right has been applied mostly in the cases both parties have cited in the context of judicial proceedings and has been held to also include documents that are filed as part of the proceedings. For example, pleadings that are filed in the courtroom proceedings, transcripts of proceedings that occur. However, to apply that right to documents that the government possesses that just have something to do with an open proceeding goes far beyond any interpretation of that right in either this Court's cases or the Supreme Court's cases. MR. COOPER COOPER Counsel, if I could ask you a question as Judge Coole. Let's assume that because of some prior proceeding in the Court, there was in the Court's files a report on the execution protocols, some written report that had been filed under seal. Would there be a First Amendment right to get access to that filed-but-sealed document? If there was a First Amendment right to that information, I don't think it would come from the right of access to execution proceedings, as Mr. Wood is trying to apply here. It's possible that it may fall under the right of access to the court proceedings that it was filed in context with. But to say that information that essentially is created or held by the executive branch just in the course of performing its duties then becomes open, then falls within the First Amendment right of access, just because that particular duty is related to an open proceeding would stretch the right of access far beyond the manner in which it's previously been applied. Thank you. In an injunction proceeding, we and the district court balances equities in terms of the specific situation. Why do you oppose release of this information? We oppose releasing the information for reasons recognized by Chief Judge Kaczynski in the dissent we cited, recognized by the district court here and also by the Georgia Supreme Court in Owens v. Hill, the case that we cited. And that's because experience has shown that when this type of information does become public, it becomes almost impossible for the States to obtain the drugs that they need to carry out these proceedings. So what do we have in the record of this case that shows that? We really have the experience of other cases. We have the district court's. So there's nothing in this record, either an affidavit from law enforcement or an affidavit from the manufacturer, that would indicate in this record that the manufacturer would stop supplying Arizona with the drugs, correct? We don't specifically have that information that is correct. I think, however, that this Court could look to the authorities we have cited that have recognized that this is an issue that arises with it. Well, it's stated as an issue. I think mostly there are a couple of anecdotal pieces of information, but mostly it's speculation as I read the cases. It may be correct speculation, but can you point to hard evidence? Not necessarily in this record. I can tell the Court that it is Apley's position that this information falls within Arizona's executioner confidentiality statute. Right. No, I understand that. Let me, as a practical matter, what's wrong with telling us what the expiration date is on the drugs? Why is that subject to what those concerns that you've just identified? The expiration date is not, and that has been provided in this case, the expiration dates of the drugs. That's part of their pleadings. They want the expiration date. And you say you've already supplied that information? In one of the responses to Mr. Wood's letters. Okay. Can you point me to the record in that? You don't have to do it now. You can use one of our gum sheets and give it to the clerk. I will. Okay. So as I understand it, is that the only reason that the State opposes it, is that it fears that if the name of the manufacturer is released, then other people will exercise their First Amendment rights and the manufacturer will voluntarily stop supplying the drug? Difficulty in obtaining the supply, that is the reason. And, Your Honor, as you're asking a question, I would somewhat modify my earlier comments. I think there is some evidence in the record. Some of the materials that Mr. Wood cites, too, discussing prior companies that the State of Arizona used for crude drugs, did stop producing once their, that information became public. I believe Lundbeck was the company. And also the supplemental material filed by Mr. Wood demonstrates another instance in Arkansas of a company refusing to continue to provide drugs after their identity was made public. Okay. So aside from Arizona's belief that it will not be able to obtain the drugs, is there any other reason you wouldn't release the information? Those, the real reason, I just want to make sure that I understand completely your position, and that's the position I'm taking. The brief is that you may have difficulty obtaining the drugs. And I just want to give you the opportunity, is there any other reason that Arizona would oppose release of the information? The reason is because we are positioned that it falls under the confidentiality statute, and the reasons that I've given you are the reasons for that statute. Okay. Now, I take it from your answer that Arizona would oppose the release of information post-execution as well. We would, because that's correct. It's our position that it is confidential. Right. I mean, the reason I'm asking that is in First Amendment cases you look to alternative means of providing the information to the public, and I assume that would not be agreeable to the State of Arizona to wait until after the execution to release the information for the reasons you've stated. That's correct, Your Honor. Okay. Thank you. And that gets me to another point I would like to address. Really, because Mr. Wood is not asserting a personal right to this information on the basis of the Eighth Amendment, but only a general First Amendment right, a stay of the execution really wouldn't be the proper injunctive relief to remedy the harm he's asking for. The proper relief, if this Court were to find a First Amendment right to the information, would be to enjoin a police from keeping the information confidential. I think an analogy is the California First Amendment coalition case asserting a public right to view the entire execution process, and there the remedy wasn't to enjoin an execution or to enjoin the Secretary carrying out an execution, it was to enjoin the prison there from keeping behind the curtain the part of the proceeding that this Court found a right of access to. Of course, the problem with that argument, I think, is that Mr. Wood's claim will become moot after the execution, so the only way that he can assert his First Amendment claim is by a stay. Right? Either that or if the Court required disclosure before the execution. Okay. So, counsel, would the Court have the power to issue an injunction on condition that would say that unless the State reveals certain information, it can't proceed with the execution, but that if it discloses that information to the public, it may proceed? Is that the kind of thing our Court could do? I believe, and this gets into how the execution itself plays into the general public right that Mr. Wood is seeking to assert, because, really, the fact of the execution is not directly related, or the timing of it is not directly related to the right, a general public right of access to the information. Right. But I think Judge Gould's question was a procedural one, which is that we could condition a stay on the disclosure. In other words, a stay, the execution would dissolve upon the States providing the information. Right. Right. And I suppose it actually might not, as a practical matter, differ whether the stay was granted, the stay was granted, but if the information was disclosed, it would be lifted. I guess either way, it wouldn't make a practical difference. My question was relating to our power here in this proceeding, whether we would have the power to issue a stay on a condition such as Judge Thomas just stated, where we'd say we're going to stay the execution unless there's a disclosure before the execution. I just wanted to know if that's an option under Article III for us. I'm not. I mean, since the Court would have a power to grant a stay of execution, I'm not sure there would be a reason why the Court would not be able to do so on the condition that if the State disclosed information, if this Court were to find a right to it, that the stay would be lifted. I'm not sure if that answers your question. Okay. Thank you. You've not had an opportunity since Mr. Wood filed his reply brief to address the new historical references, such as the disclosure of the rope and hanging and so forth. Do you have anything to add to your brief on that? I would mostly rely on the arguments in the brief. There's nothing in that information to really indicate when much of that information did become public. Much of it is historical. It's in a museum now. Well, that doesn't really tell us much about if it was at the time it was being used, if it was historically open. And as Judge Bybee noted, we have really no evidence of historical openness regarding the type of information, the specific type of information that Mr. Wood is seeking in this case regarding the sources of execution drugs. And, in fact, it currently is about half of the States that do have the death penalty that have the type of confidentiality statutes that Arizona had. The Court would like I could provide those citations afterward. So, Counsel, how many States do you know offhand continue to make this information available, that is, for example, the identity of the manufacturer? I believe of the approximately 32 States that have the death penalty, it's 15 or 16. And it's not necessarily that they specifically make the information public. It's that it falls within their state open records law or equivalent of the Freedom of Information Act. And those States don't have, like Arizona, don't have a specific confidentiality statute that would exempt that information from the general open records laws. Today we've been talking. So you think that about half of them have a public records law without a confidentiality statute, so that they probably would make this information available if somebody filed a Public Records Act action? That's right. I think they would have to under their, you know, in the specifics of their laws. Okay. And likely, yes. And so by implication, then, are you telling us that you think that there's about half of the States that have an execution confidentiality statute similar to Arizona's that would protect this information or shield it? That's right. That's right, Your Honor. And I think the fact that those type of laws exist to provide access for information, as Mr. Wood concedes in his reply brief, the purpose, Congress's purpose in enacting the Freedom of Information Act, for example, was to provide the public with access to information that was not traditionally public, so information that wasn't traditionally open, so that wouldn't have been open to the public already under a First Amendment right of access to government proceedings, which just further shows that this is not the type of information that has historically been thought to fall within the First Amendment right of access to government proceedings. It's a decision for the political branches, mostly, which information that the government possesses should be available to the public. And by stretching the right of access to governmental proceedings to the public,  to reach the type of information that Mr. Wood seeks here, it stands to reason that, for example, in a criminal trial, there's a right of access to the trial, to the proceedings themselves, and to documents that are filed as part of it. But the interpretation Mr. Wood seeks here would seem to grant a First Amendment right to information that is in the prosecution's possession, for example. And also, even within the right of access, as the courts have recognized, there are limits. There is no right to general discovery. There isn't a public right of access to the materials exchanged between the parties of discovery. So even the right as recognized has limits. Today, we've been talking about the drugs to be used in the execution. Part of the claim has to do with seeking information about the qualifications of the persons administering the drugs. What's the basis of the State's opposition to providing that information? The basis is that also falls within the confidentiality statute. And it's the appellee's position that that information could potentially lead to uncovering the identities of those individuals. Right. But if protections are taken, I assume you don't have any objection to that? If we were ordered to do it, but we still believe that that does fall within the statute. Right. But leaving the statute aside, I guess my question is, what is the State's – what's the basis of the State's opposition to that portion of the request? Why do you – aside from the statute, why are you opposed to it? Because the protocol, the department order 710 that's in the excerpts of record provides the general qualifications that the members will have that will be used. And it's – again, I hate to repeat myself, but the reason would be the potential for their identities becoming uncovered. Okay. Counsel, if we were to order disclosure of these – of information that was contrary to Arizona's confidentiality statute, would we have to hold your statute unconstitutional? I don't believe the whole – you would have to find the whole statute unconstitutional. No. My question wasn't whether we have to find the whole statute unconstitutional. We have to find any part of it unconstitutional. If you're compelled to do something by the First Amendment that is contrary to your State statute, wouldn't that be a judgment that your statute was unconstitutional? It would at the very least be a judgment that application of the statute to the particular information is unconstitutional. I take it the State of the Arizona Supreme Court has not construed the confidentiality statute as to whether or not it applies to the release of information about the drugs. Isn't that so? That's correct. There is actually a civil rights lawsuit pending in the trial court level in the State that's challenging the limits of that confidentiality statute. Okay. Any further questions? Not in the air. Thank you. Thank you. Thank you, Your Honor. Thank you, counsel. Just a few quick points in rebuttal. Judge Thomas, you asked about the record. There is no record before this Court that it's been impossible to obtain drugs. In fact, as we pointed out in our reply brief, Arizona has carried out the last 13 executions since 2010 without any problem. Here, this Court cannot consider information that is not before it. Disclosure of prior historical information such as the ropes, the gas chamber, on page 23, footnote 8 of our opening brief, we cite to these articles that were from the 1800s. These are articles that were contemporaneous at the time that this information that the executions were occurring in this way. The confidentiality statute itself does not call for closure of this information. The confidentiality statute specifically says the identity of executioners and other persons who participate or perform ancillary functions. So it doesn't talk about labels of the drug. It doesn't talk about qualifications of the people involved, and it doesn't talk about records that the government has relied upon in selecting this two-drug protocol from Ohio, which is the only state to have used this two-drug protocol, and there were problems during that execution where the prisoner gasped for breath for 13 minutes. I think if your honors would refer to the letter that was sent to the director on May 9th, which is ER 118 to 122, that lays out the reasons for this information and why Mr. Wood, as a member of the public, has right of access to this information. Finally, the stay. This Court has the power to issue a stay of execution. Here, Mr. Wood only needs to show a likelihood of success on the merits. He does not need to show that he will definitely succeed on the merits. This is an issue that's of great importance, and it's been briefed very quickly before this Court, and there has not been a robust record developed below. But he has, in fact, shown, based on principles of the First Amendment, based on this Court's holding in California First Amendment coalition and other cases giving a right of access to documents related to governmental proceedings, that he, in fact, can show a likelihood of success in particular where the government in this case has not stated any compelling interest to withhold this information that is not identifying information about persons involved in the execution process. So we would ask that this Court grant injunctive relief and a stay of execution if the information is not provided to Mr. Wood. Thank you very much, counsel. Thank you. Thank you for your arguments and for traveling to San Francisco on short notice. And I gather we have two other potential proceedings. You have the 60B appeal and the original 2241 lodged. Is that the – those are the two pleadings we have in addition to this one? Yes, Your Honor. Very good. Okay. We'll ask all of you to stay in contact with our death penalty law clerk and advise you of filings and timing. And we will also informally advise you through her as to timing on our end of things. So thank you much for your arguments. We'll be in recess.
judges: THOMAS, GOULD, BYBEE